**In re SEALED MOTION.**

**Division No. Misc.–2.**

United States Court of Appeals, District of Columbia Circuit.

(Division for the Purpose of Appointing Independent Counsel Ethics in Government Act of 1978, as Amended).
July 21, 1989.

As Amended July 26, 1989.

**1368**

Before MacKINNON, Presiding,
BUTZNER and PELL, Senior Circuit
Judges.

PER CURIAM:

█ Independent Counsel moves the
court to reconsider its Order to release to a

witness the transcript of his testimony as a witness before the grand jury in this proceeding under the Ethics in Government Act.[1] Movant (Independent Counsel) contends that the rule applicable to ordinary criminal proceedings applies to the instant case. However, such contention does not give adequate consideration to the *sui generis* nature of the Independent Counsel Act and its specific provisions. We therefore hold that as a grand jury "witness" in an independent counsel proceeding, said witness is entitled to a copy of his testimony since no indictment was returned and the Final Report has been filed. In any event, the record shows the existence of the requisite "particularized need"—"in connection with a judicial proceeding." Independent Counsel's motion to reconsider is accordingly denied.

### I. THE INDEPENDENT COUNSEL ACT

The Independent Counsel Reauthorization Act of 1987, 28 U.S.C. § 591 *et seq.*, and its predecessors have specifically empowered this division of the court, in the exercise of its judicial discretion, to ensure that individuals "named" in a final report of an independent counsel's investigation of high government officials are treated fairly and justly. The Act primarily applies only to the highest level officials of government and confers extraordinary "power and responsibility" upon independent counsels to investigate such high-level officials and to file a complete report of the investigation whether or not any indictments are returned. Specifically, the Act specially "directs" the court to protect the rights of

1. The Independent Counsel originally raised two related objections to the motion of the witness to obtain a transcript of his own testimony before the grand jury contending that the witness "has no absolute right to his grand jury testimony" but must show (1) a "particularized need" for such testimony (2) "in relation to a judicial proceeding," Fed.R.Crim.P. (6)(e)(3)(C). Motion in Opposition at 2 (*See also* Motion to Reconsider at 3, n. 4, reiterating same objections.). This court granted the motion to release the testimony. Independent Counsel also

objected that the motion was "premature" as the Final Report had not been released. However, most counsel in these cases, apparently out of an abundance of caution to protect their clients' rights, generally make premature motions anticipating the contents of the Final Report. The court, however, does not rule on such motions until the report is released and it did not rule here until it had reviewed the Final Report and other relevant documents and made certain observations from our much earlier knowledge of the facts that supported the witness' motion.

any "individual named" in the report. To this end, 28 U.S.C. § 594(h)(2) provides: "The division of the court shall make such orders as are appropriate to protect the rights of any individual named in such [final] reports." The legislative history of the Ethics in Government Act, *supra,* emphasizes this duty.[2]

One mechanism designed to ensure fairness to "named" individuals authorizes the court, in its discretion, to disclose relevant portions of an independent counsel's report, prior to its public release, to any individual named in a report and to authorize such individuals to submit "comments or factual information" that the court may, in its discretion, find to be appropriate for inclusion in an appendix to a final report upon its public release.[3] (Hereafter the "comment proceeding".). This proceeding implements the congressional intent that individuals named in an independent counsel's report be treated fairly. In the instant case, fairness considerations are heightened due to interests of the highest national importance. The court finds it important as to the witness (a high government official), the government and the public that he be given every reasonable opportunity to ensure the accuracy of the Independent Counsel's Report as to him and his conduct. At all times relevant hereto the named witness was serving in a high government position.

The Independent Counsel Act, 28 U.S.C. § 591 *et seq.,* is *sui generis* in many aspects. It was a product of Congress' and the public's recurrent concerns, most recently aroused by "Watergate," and the earlier history of Tea Pot Dome and the Truman Tax Scandals, *see In re Olson,* 818 F.2d 34 (D.C.Cir.1987), that the Executive Branch could not be expected to be politically impartial, or be perceived to be politically impartial, in investigating and making prosecutorial decisions involving high ranking officials in the Executive Branch.

> The President and the Attorney General must have policy control to make discretionary enforcement decisions. However, where the alleged criminal conduct of high level officials is involved, this argument must bow to the fundamental principle that no man can be a prosecutor or judge in his own case.

S.Rep. No. 170, 95th Cong., 1st Sess. 5, March 16, 1977.

The Independent Counsel Act provides for the special division of the court to appoint independent counsels who have considerable independence from the Executive in pursuing an investigation and possible prosecution of a subject. The Act subjects *only* the highest officials in our government to investigation by a prosecutor who is specially appointed and independent from the normal constraints and checks on prosecutorial power. Moreover, the Act requires the Independent Counsel to file a report even though no indictment is returned. This is contrary to the practice in federal grand jury investigations.[4] Because of an independent counsel's special powers, Congress provided special proce-

---

**2.** "[T]he committee is very cognizant of the rights of a criminal defendant. Just because a person holds a high-level position does not justify making unsubstantiated allegations of criminal conduct public, nor does it justify publicly announcing the initiation of a criminal investigation in a very early stage of the investigation." S.Rep. No. 170, 95th Cong., 1st Sess., 58, March 16, 1977.

**3.** The division of the court may release to the Congress, the public, or any appropriate person, such portions of a report made under this subsection as the division of the court considers appropriate. The division of the court shall make such orders as are appropriate to protect the rights of any individual named in such report and to prevent undue interference with any pending prosecution.

> The division of the court may make any portion of a final report filed under paragraph (1)(B) available to any individual named in such report for the purposes of receiving within a time limit set by the division of the court any comments or factual information that such individual may submit. Such comments and factual information, in whole or in part, may, in the discretion of the division of the court, be included as an appendix to such final report.

28 U.S.C. § 594(h)(2).

**4.** *Hammond v. Brown,* 323 F.Supp. 326 (N.D. Ohio, E.D.1971), *aff'd,* 450 F.2d 480 (6th Cir. 1971); *Application of United Electrical, Radio and M. Workers,* 111 F.Supp. 858 (S.D.N.Y. 1953).

dures, described above, to ensure fairness to the targets of such investigations and to those touched by investigations. The present dispute over the original motion by the witness for his grand jury testimony arises over the proper balance between the prerogatives of the Independent Counsel and the rights of one of those swept up in the investigation.

The legislative history of the Act demonstrates that Congress appreciated the unique nature of the Independent Counsel office it created and the dangers the law posed to all touched by an investigation. The critical feature of the Act is that an independent counsel, because he investigates high ranking members in the Executive Branch, has a very large measure of independence from the executive.

> One of the serious problems with the appointment of a truly independent special prosecutor is that there is no one [except, in limited circumstances, the court] supervising the activities of the special prosecutor. Inherent in such a situation is the possibility of a runaway prosecutor or a special prosecutor who does not bring the prosecutions that should be brought.

S.Rep. No. 95–170 p. 70. Congress sought to ameliorate some of these problems by requiring that an independent counsel file a final report with this division of the court. Congress viewed the report as a "very important" means to "insure the accountability of a special prosecutor." *Id.* In such reports, an independent counsel must "set forth fully and completely a description of the investigative work of the independent counsel" even though no indictment was returned. 28 U.S.C. § 594(h)(1)(B). Thus, in most cases, the court, the Congress, the Department of Justice and, ultimately, the public would have access to "a detailed and official record of the activities of the special prosecutor [independent counsel] which may be reviewed and analyzed at the appropriate time." S.Rep. 95–170 p. 70–71. Filing a report that may be made public where no indictment is returned is a com-

plete departure from the authority of an United States Attorney following the return of a no bill by a grand jury.[5]

In addition, the Act provides a check, referred to above, on the discretion of an independent counsel by providing individuals named in a final report with an opportunity to submit comments that may be added as an appendix to the report. Congress created the comment proceeding in an effort to ensure fairness and accuracy in the final report of a "truly independent special prosecutor." To this end, the Act also vests jurisdiction in this division of the court to "make such orders as are appropriate to protect the rights of any individual named in such [Independent Counsel] report...." Section 594(h)(2). This authority vested in the special court provides a highly desirable check on what would otherwise allow an independent counsel to file an unbridled final report.

Congress thus found it necessary to make the comment proceeding available to provide some protection for targets, witnesses and affected parties in independent counsel investigations.

## II. WITNESS' RIGHT TO HIS GRAND JURY TESTIMONY

The named witness contends that the general "rule of grand jury secrecy does not prohibit disclosure to a witness of his own grand jury testimony." Motion to Release at 2. Conversely, the Independent Counsel asserts that the general rule of grand jury secrecy, Federal Rule of Criminal Procedure 6(e)(2), requires that the witness make a "strong showing of a particularized need" to gain access to his own grand jury testimony. Motion in Opposition at 3.

■ Whether a grand jury witness is entitled to his own grand jury testimony has sparked conflicting rulings and observations in the federal courts. The Supreme Court has not passed on this precise question.[6] We conclude that because the right

---

**5.** TAN 2.

**6.** The Independent Counsel views two Supreme Court decisions, *United States v. Sells Engineer-*

to secrecy in grand jury proceedings belongs to the grand jury witness, a grand jury witness named in an independent counsel's report is entitled to a transcript of his own testimony absent a clear showing by the government that other interests outweigh the witness' right to such transcript.

In *Bursey v. United States*, 466 F.2d 1059 (9th Cir.1972), a unanimous panel of the Ninth Circuit held that where grand jury witnesses are confronted with "repititious questioning," concepts of fundamental fairness inherent in due process require that the witness be protected from unfair exposure to a perjury prosecution. The court granted the defendants' motion for a transcript of their prior grand jury testimony, to avoid unfairness, unless the government could demonstrate "some particularized and substantial reasons" to oppose the motion. *Bursey* at 1080 (citing *United States v. Projansky*, 44 F.R.D. 550 (S.D.N.Y.1968).

The following year in *United States v. Fitch*, 472 F.2d 548 (9th Cir.1973), a different Ninth Circuit panel stated in a footnote that "[g]rand jury witnesses are not entitled as a matter of right to a transcript of testimony given before the grand jury." *Fitch* at 549 n. 6. The facts of that case, however, are clearly distinguishable. The case involved a demand by several grand jury witnesses, against whom the grand jury "may find more indictments," of advance "*assurance* that they would receive a copy of the transcript of such testimony as they might give." *Id.* (emphasis added).

The only allegedly supporting authority cited was *United States v. Ayers*, 426 F.2d 524, 529 (2nd Cir.), *cert. denied*, 400 U.S. 842, 91 S.Ct. 85, 27 L.Ed.2d 78 (1970), which arose at a time when the transcription of grand jury testimony was discretionary with the court. The *Ayers* court remarked "that opportunity to examine transcribed grand jury minutes of a witness' testimony should *always* be accorded defense counsel for the purpose of cross examination of that witness after he has testified at trial." *Id.* (emphasis added).

Faced with the two Ninth Circuit rulings, the Nevada District Court found the *Bursey* opinion more persuasive. So do we. The Nevada court pointed out in *Matter of Ferris*, 512 F.Supp. 91 (D.Nev.1981), that the government's interest in nondisclosure [*see* Fed.R.Crim.P. 6(e)(2) ] was a *non sequitur* when a grand jury witness moves for a copy of his own testimony because the right to secrecy in a grand jury proceeding belongs to the grand jury witness and the witness is already cognizant of his testimony: "[N]ondisclosure is a privilege of a witness himself, and not of the Government or the Grand Jury. Further ... the witness is free to make full disclosure [of his own testimony]; therefore, the effect of the transcript on the secrecy of the grand jury proceedings is minimal." *Ferris* at 92. *See also United States v. Heinze*, 361 F.Supp. 46 (D.Del.1973); *In re Russo*, 53 F.R.D. 564 (C.D.Cal.1971); *United States v. American Radiator & Standard Sanitary Corp.*, 45 F.R.D. 477 (W.D.Pa.1968).[7] It is also significant that the

---

ing, Inc., 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983) and *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), as controlling precedent on this issue. However, neither case prohibits the release of grand jury testimony in a proper case. They do establish that a movant in the ordinary criminal case is required, prior to being granted access to such material, to make a strong showing of particularized need for grand jury material under Federal Rules of Criminal Procedure 6(e)(3)(C)(i). Both *Sells Engineering* and *Douglas Oil*, however, involved cases where the movants sought disclosure of grand jury testimony of *third parties*. Thus those cases are distinguishable from this cause. For reasons set forth below, we conclude that where movant is a witness and seeks a transcript of his own

grand jury testimony, the standards outlined in *Sells Engineering* and *Douglas Oil* do not apply.

7. In a related line of reasoning, other courts have taken positions similar to *Ferris* and held that providing a witness with his own grand jury testimony has a minimal effect, perhaps no effect, on grand jury secrecy. Because Fed.R. Crim.P. 6(e) generally prohibits "disclosure" of grand jury material by persons *other than a grand jury witness*, courts have held that where a grand jury witness is provided with a transcript of his own testimony there has not been a "disclosure" of grand jury material—*i.e.*, the witness already has general knowledge of his own testimony. In *Heinze*, the court stated:

Since the witness obviously was in the Grand Jury Room and aware of his own testimony when he gave it, it can scarcely be said that

federal secrecy rule, which differs from the rule in some states, does not designate a "witness" as one of those who is bound to secrecy. The Federal Rule provides:

A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. *No obligation of secrecy may be imposed on any person except in accordance with this rule.* A knowing violation of Rule 6 may be punished as a contempt of court.

Fed.R.Crim.P. 6(e)(2) (emphasis added). Thus a "witness" is not bound to secrecy by the Federal Rule.

Professor Wigmore also explains that the right to the secrecy of the testimony of a grand jury witness belongs to the witness and thus .the privilege is his to waive:

The privilege [of secrecy in grand jury proceedings] ... is not the grand juror's, for he is merely an indifferent mouthpiece of the disclosure. Nor is it entirely the state's for the state's interest is merely the motive for constituting the privilege. The theory of the privilege is that the witness is guaranteed against compulsory disclosure; the *privilege* must therefore be *that of the witness,* and rest upon his consent.

VIII *J. Wigmore, Evidence* § 2362 (McNaughton Rev.1961) (emphasis in original).

The Independent Counsel also relies on *United States v. Clavey,* 565 F.2d 111, 114 (7th Cir.1977), and *Bast v. United States,* 542 F.2d 893 (4th Cir.1976). The dissent in

those cases, however, cogently stated the Wigmore view. *See Clavey* at 120 (Swygert, J., dissenting), *Bast* at 898 (Wyzanski, J., dissenting). *Clavey* ruled that a grand jury witness has no general right to a transcript of his own testimony, but remarked that it was proper for a grand jury witness to obtain the transcript of his testimony in aid of his right to recant. The transcript was denied to Clavey because the witness "refused to verify his petition" claiming that he was "unable to recall his prior testimony because of a poor memory attributable to physical impairments." *Id.,* at 114. *Bast* also recognized that the requirement of grand jury secrecy did not exist if a witness showed particularized need for the transcript and held that rumors that the witness was a government informer did not constitute the necessary particularized need. These two cases are distinguishable on their facts.

The Third Circuit in *United States v. Rose,* 215 F.2d 617 (3rd Cir.1954), also followed the Wigmore analysis when it held that the trial court erred in denying Rose's motion to review a transcript of his grand jury testimony which provided the predicate for the appellant's perjury conviction. The Third Circuit dismissed the government's contention that the disclosure of a transcript would endanger the secrecy of the grand jury proceeding with this comment:

[S]ince all the defendant wanted was his *own* testimony, the sanctity of the grand jury is hardly in question. In addition, such disclosure would not subvert any reasons traditionally given for the inviolability of grand jury proceedings.

*Rose* at 619 (emphasis in original).[8] A witness' memory of what he said is no ade-

---

his review of his testimony in those proceedings was a "disclosure." *Heinze* at 57.

As *In re Minkoff,* 349 F.Supp.154 (D.R.I.1973), where the court ruled to provide a grand jury witness with a copy of his own testimony, adroitly stated: "There is no merit in a paranoid secrecy for the sake of secrecy itself." *Minkoff* at 158.

**8.** The *Rose* court outlined the traditional reasons for grand jury secrecy which centered on

encouraging grand jury witnesses to testify and pointed out that the interests behind grand jury secrecy were not compromised by release of a witnesses' own grand jury testimony. Significantly, the Supreme Court, in *United States v. Procter & Gamble,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), cited *Rose* as correctly outlining the principles underlying grand jury secrecy and set forth the reasons at length:

quate substitute for the minutes themselves. *Id.,* at 629. And the witness here has a particular need for his grand jury testimony since he may comment on statements in the Report of the Independent Counsel.

■ Upon reviewing the decisional law concerning the proper standard to be applied to a witness' request for a transcript of his own grand jury testimony, we find that a grand jury witness has a general right to a transcript of such testimony absent the government demonstrating countervailing interests which outweigh the right to release of a transcript. The Independent Counsel has made no such showing here and the record in this cause demonstrates that such grounds do not exist.

## III. JUDICIAL JURISDICTION OVER GRAND JURY TRANSCRIPTS

■ The Independent Counsel also asserts that this court lacks jurisdiction to authorize the release to the witness of his *own* grand jury testimony primarily because the court which empanels a grand jury in most cases already has exclusive jurisdiction over the transcripts of the grand jury. Thus any motion seeking release of such transcripts must, necessarily, be directed to the empaneling court. Motion to Reconsider at 4–5. Additionally, the Independent Counsel contends that this court "appears to have reached the same conclusion" when we ruled that the court was without authority to release grand jury material to another party in a different independent counsel investigation. Motion to Reconsider at 6.

However, Independent Counsel has an incorrect understanding of the prior independent counsel matter referred to.[9]

Turning to the merits of this issue, the Independent Counsel cites *Gibson v. United States,* 403 F.2d 166 (D.C.Cir.1968), an ordinary criminal case, as dispositive authority for the position that the court which empanels a grand jury has exclusive jurisdiction over the grand jury transcripts. In *Gibson,* the defendant-appellant moved the Court of General Sessions of the District of Columbia to order the United States District Court for the District of Columbia to release the grand jury transcripts of the complaining witness and other witnesses

In *United States v. Rose, supra* at 628–629, those reasons [for grand jury secrecy] were summarized as follows:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before a grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*Procter & Gamble,* 356 U.S. at 681–82 n. 6, 78 S.Ct. at 985–86 n. 6. More recently, in *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), the Court has reaffirmed its agreement with the *Rose* view of the reasons for grand jury secrecy. *Douglas Oil,* 441 U.S. at 219 n. 10, 99 S.Ct. at 1673 n. 10.

**9.** The Independent Counsel cited this court's Order in In re Franklyn C. Nofziger, Edwin Meese III, Div. No. 87–1, July 6, 1988, which denied Mr. and Mrs. Meese access to grand jury material relating to the investigation of Mr. Meese. In the Motion to Reconsider, the Independent Counsel refers to this order as dated July 7, 1988. Actually, the parts of the order cited by the Independent Counsel were contained in an order issued July 6, 1988. The July 6, 1988, Order, however, *did not deny* Mr. and Mrs. Meese *access* to their grand jury testimony. A June 23, 1988 order had already given the Meeses access to their own grand jury testimony. The July 6 Order merely denied Meese and Wallach, the Meeses' attorney, access to the "grand jury testimony and exhibits of individuals who testified before the grand jury during the investigation of Mr. Meese and Mr. Wallach ... for the purpose of a response to the Report," (*id.,* at 2), *i.e., third party grand jury testimony,* because it stated it lacked authority to grant such general access. The Meese request had no special grounds and there was no special inquiry. Moreover, a grand jury in New York was investigating Mr. Wallach. The June 23 Order demonstrates that the court has consistently exercised the authority in an appropriate case to order release of a grand jury witness' own grand jury testimony where the witness is an individual named in an independent counsel report.

the Government planned to call at trial. In such circumstances, this Circuit found that the District Court "alone has jurisdiction to order production of the [grand jury] minutes." *Gibson* at 167. The Supreme Court observed that this approach is "generally followed" in the federal courts and thus represents the general rule. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 225, 99 S.Ct. 1667, 1676, 60 L.Ed.2d 156 (1979).

■ Assuming, *arguendo*, that the Independent Counsel has accurately summarized the proper general rule a court should apply in determining which court has the authority to release grand jury transcripts, a general rule is still subject to a specific countervailing statutory provision. It is well established that a special law supersedes a general law. *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974); *Preiser v. Rodriguez*, 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836–37, 36 L.Ed.2d 439 (1973); *Bulova Watch Co. v. United States*, 365 U.S. 753, 758, 81 S.Ct. 864, 867, 6 L.Ed.2d 72 (1961); 2A *Sutherland Statutory Construction* (Sands, 1972, § 51.05, p. 315) ("Where there is no clear intent otherwise, a specific statute will not be controlled by a general one, regardless of priority of enactment."). *See also Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976); *Chatman–Bey v. Thornburgh*, 864 F.2d 804, 818–19 (D.C.Cir. 1988) (*en banc*). Citing *Brown v. G.S.A.*, 425 U.S. 820, 834, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1973), which in turn cites *Preiser v. Rodriguez, supra*, ("[A] precisely drawn, detailed statute pre-empts more general remedies."). The Independent Counsel Act contains a special provision which empowers the court to "make such orders as are appropriate to protect the rights of any individual named in such (the

Independent Counsel's) report ..." 28 U.S.C. § 594(h)(2). In the present circumstances we consider that this special statute supersedes the alleged general rule granting the empaneling court exclusive jurisdiction over grand jury minutes where the division of the court finds it appropriate to protect the rights of any individual named in a final report.

The same result is supported by *Morrison v. Olson*, —— U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), where the Chief Justice compared the "functions that the Special Division is empowered to perform ... to functions that federal judges perform in other contexts, *such as deciding whether to allow disclosure of matters occuring before the grand jury.*" *Morrison*, 108 S.Ct. at 2614 (emphasis added). As the brief of the witness states: "[t]hat the [Supreme] Court chose disclosure of grand jury transcripts as a clear example of the judicial power the Division might legitimately exercise is highly significant ..." Supplemental Motion at 4.

In addition to the specific provision of the Act, the entire legislative history of the Ethics in Government Act indicates, as above stated, that Congress was very cognizant of the necessity of protecting the rights of individuals named in an independent counsel report. *See* S.Rep. No. 170, 95th Cong., 1st Sess. 58 (1977).[10] The Act, which authorizes the Special Division to appoint independent counsel and to define jurisdiction, applies principally to officials holding offices of the highest level in our Government. Because of their status in government, and the special vulnerability that any investigation can cause to their reputation and position, Congress determined that such government officials require special protection against publicized allegations of unsubstantiated criminal conduct.[11] *See* S.Rep. No. 95–170, at 58–59

---

**10.** TAN 1.

**11.** This differs from the practice in ordinary federal grand juries whose duty is to indict and is without authority to file critical reports. *See,* n. 4. The fact that this division of the court has exclusive jurisdiction and unique powers in the District of Columbia Circuit Court system is not unusual since Congress in recent years has cre-

ated several such courts in this Circuit with exclusive jurisdiction. See 50 U.S.C. § 1803(a) [Foreign Intelligence Surveillance Act creating special courts]; 12 U.S.C. § 1904, note § 211(b)(1) [Temporary Emergency Court of Appeals]; 45 U.S.C. § 719 [Special Court of Regional Rail Reorganization Act]; 28 U.S.C. § 1407 [Judicial Panel on Multidistrict Litiga-

("Just because a person holds a high level position does not justify making unsubstantiated allegations of criminal conduct public ...").

This protection is particularly necessary because, under the Act, such officials are often called as witnesses and are named in a public final report which comments on their entire conduct in office, even though they are exonerated of any criminal offense. 28 U.S.C. § 594(h)(2).

We find that such final reports may also name and discuss the conduct of other high-ranking officials who may testify, or whose official acts may be the subject of testimony and be commented on in the report. Their position in the matter being investigated is subject to being misunderstood and they have many of the same vulnerabilities as the target of the investigation. Recognizing the "enormous power and responsibility" of the Independent Counsel, Congress "directed" the court to take "appropriate steps to protect the rights of any individual named in the report." S.Rep. 95–170 at 70–71. "Thus, the handling of the report, its release and the opportunity for rebuttal are within the control and discretion of the court." *Id.*, at 71. The entire Act, and the procedures it authorizes, demonstrate a legislative intent for the division to require strong protection for officials and others who are caught up in an investigation and are named in a report—particularly when no indictments are returned. The Independent Counsel Act in this respect, therefore, is a highly special law, provides for rights and procedures that do not exist in investigations of ordinary criminal offenders, and, as above noted, its special provisions may take precedence over general laws.

Thus, even assuming that a general rule, derived from caselaw, provides that the court supervising a grand jury generally has exclusive jurisdiction over the grand jury transcripts, the specific language of the Independent Counsel Act and its legislative history authorize this court in this

cause to issue an order that calls for the disclosure of a witness' grand jury testimony to protect the rights of an individual named in the Report. This is an exception to the general rule—if the general rule would deny a witness a copy of his own testimony.

■ As to which court has jurisdiction to release grand jury testimony, Independent Counsel asserts that, as an iron-clad rule, the court which empanels a grand jury is the only court with jurisdiction over the grand jury minutes. The rule, however, is not absolute. Following Supreme Court precedent in this area, we hold that the proper standard to apply is that the court in the best position to weigh competing policy concerns has jurisdiction to determine whether to release grand jury transcripts.

The seminal case on this issue is *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). *Douglas Oil*, as noted above, states that generally the court which supervised a grand jury should review requests for release of the grand jury minutes. 441 U.S. at 225, 99 S.Ct. at 1676. The Court, however, noted that the theory underlying the practice was that the empaneling court was ordinarily "in the best position to determine the continuing need for grand jury secrecy." 441 U.S. at 225–26, 99 S.Ct. at 1676–77. Such reasoning, however, does not control this cause. Thus, while the Court in *Douglas Oil* found that, "in general, requests for disclosure ... should be directed to the court that supervised the grand jury activities ..." 441 U.S. at 226, 99 S.Ct. at 1676. Such a rule is not required to be followed in every case. 441 U.S. at 226, 99 S.Ct. at 1676. The court which *is best able to weigh competing policy concerns* should make the final decision.

Before Independent Counsel was appointed and the investigative jurisdiction

tion]; appeals from the Federal Communications Commission, 47 U.S.C. § 402; civil actions by the United States Senate to enforce subpoenas, etc. (district court), 28 U.S.C. § 1365; cer-

tain voting rights cases where voting qualifications and procedures are altered, 42 U.S.C. § 1973c, and (enforcement proceedings), *i.e.*, § 1973b and 1973c.

defined, the drafting of the order in this cause was preceded by reviewing extensive hearings, reports, reviews and recommendations. Since then the court has also studied the extensive report of the Independent Counsel as well as all comments submitted by individuals to weigh "competing policy concerns."

Applying the rationale of what court is best able to weigh competing policy concerns to the request of the witness for his own grand jury testimony, we conclude with all respect to the district court, that, *in this cause,* this division of the court is in the best position to balance the need, if any, for grand jury secrecy against the movant's interest in obtaining the grand jury material.[12] Our primary reason for reaching this conclusion is based on this court's extensive involvement in and attention to the Independent Counsel's investigation from its inception until the present time and its familiarity with all the supporting documents.

The Independent Counsel Act charges the Special Division with, *inter alia,* the duty to receive an application for appointment of an independent counsel, "appoint an appropriate independent counsel" and "define the independent counsel's prosecutorial jurisdiction." 28 U.S.C. §§ 592(c), 593(b)(1). Additionally, the Special Division exclusively receives the reports describing the work of the independent counsel. 28 U.S.C. § 594(h)(1). Through these procedures, the Special Division has acquired extensive and unique knowledge concerning the needs for grand jury secrecy and the rights of those seeking release of the grand jury minutes.[13] And where, as here because of the long delay, *time* is a factor, as *Douglas Oil* states, it is obvious that the division is better able to consider promptly all the necessary background and render an appropriate decision. An immediate disclosure is necessary because the cause has been pending for a long period and the district court should not be required to spend the great amount of time to study the massive record that should be covered before deciding the motion.

## IV. PARTICULARIZED NEED

■ Although we hold that a grand jury witness has a general right to a transcript of his own grand jury testimony when sought in connection with a judicial proceeding, we also note that all the files and records indicate that a strong showing of particularized need for a transcript of the named witness' grand jury testimony exists in this cause. Thus, if a particularized need test were applied to the instant case, the record amply supports such finding.

The Independent Counsel primarily relies on two cases, *Bast v. United States, supra,* and *In re Bianchi,* 542 F.2d 98 (1st Cir.1976), as showing that the argument advanced by the witness are "legally insufficient to demonstrate particularized need." Motion in Opposition at 4. Both cases,

---

**12.** As stated, *supra,* we also find that where a party moves for a transcript of his *own* grand jury testimony in connection with another judicial proceeding, the movant need not always demonstrate a particularized need. There are situations, however, where a witness should not be allowed to receive his grand jury testimony.

**13.** We note that in *Douglas Oil,* the Court outlined a general procedure whereby the empaneling court and the court where the judicial proceeding for which the transcript is sought reach a consensus on whether to release the transcript. *Douglas Oil* 441 U.S. at 231, 99 S.Ct. at 1679. In this *sui generis* matter, however, since this court has been involved in this cause for a considerable period and is well qualified to weigh the continuing needs for grand jury secrecy as well as especially qualified to determine the interests of the movant, we find that consultation with the district court is unnecessary. *Douglas Oil* appears to have contemplated such a situation even though a court may have limited knowledge: "Undoubtedly there will be cases in which the court to whom the Rule 6(e) request is directed will be able intelligently, on the basis of limited knowledge, to decide that disclosure plainly is inappropriate or that justice requires *immediate disclosure* to the requesting party, without reference of the matter to any other court." 441 U.S. at 231, 99 S.Ct. at 1679.

Mindful of the Court's admonition in *Morrison v. Olson, supra,* to interpret the Independent Counsel statute narrowly, we emphasize that this ruling is confined to the specific facts of this case—*i.e.,* where a grand jury witness moves for a transcript of his own grand jury testimony in an investigation with a massive record and immediate disclosure is highly desirable.

however, are distinguishable from the issues presented in the instant cause.

In *Bast*, the appellant sought a transcript of his grand jury testimony to correct any inadvertent errors he might make in relating his testimony to third parties or errors made in the recording process. Additionally, *Bast* stated he was entitled to a transcript because it may be of use in a future suit against the government and to combat rumors that he was a government informer. *Bast* at 847. The court found Bast's reasons to be insufficient and speculative in view of the fact he was not being investigated or subject to indictment. *Id.*

Similarly, in *Bianchi*, the movant sought a transcript of his grand jury testimony for review to prevent him from committing perjury. Bianchi was a recalcitrant grand jury witness who had been granted use immunity (pursuant to 18 U.S.C. §§ 6002 and 6003). The First Circuit found that such immunity protected Bianchi from use of his present grand jury testimony in a prosecution for a prior perjury offense and he had no right to protection from future perjury. *Bianchi* at 100.

Here, the witness' request for his grand jury transcript is easily distinguishable from both *Bast* and *Bianchi*. The subject matter of the witness' testimony was important to the investigation and unlike Bast it had some tendency to expose him to criminal liability. Additionally, unlike either Bast or Bianchi, this witness, having testified in an independent counsel proceeding, was subject to be named in the public Final Report which could and did comment on his role in an investigation into possible criminal misconduct by high-level officials of the government. The witness therefore is subject to more than mere "rumors" about his conduct; he is subject to a Report which bears the imprimatur of the Independent Counsel. And, unlike Bianchi, granting the motion of the named witness, in addition to providing some protection to him from a perjury charge, will provide considerable public benefit. The witness, a high-level official who is an important government witness, seeks to protect his actions in office and his reputation in the community by assuring the *accuracy* of any grand jury references to his conduct in office. Under these circumstances we find the need for disclosure to be greater than the need for continued secrecy. *Douglas Oil* at 226, 231, 99 S.Ct. at 1676, 1679.

It would be very difficult for the witness to fully protect his reputation and ensure the *accuracy* of the report if he is required to rely merely on his memory of his extensive grand jury testimony. Memory is "no adequate substitute for the minutes themselves." *Rose, supra,* at 629. It is not as strongly probative as an *accurate* transcript. The witness was subjected on two occasions to extensive questioning before the grand jury, on two widely separated days, and one cannot read the reports of the investigations without concluding that the original movant was a material witness to very relevant facts. He is frequently quoted and referred to. His testimony was central to the factual and legal controversy created by the cause. As in *Bursey v. United States, supra,* this court attaches significance to the volume of testimony the grand jury witness provided, as well as its subject matter, when considering a request for a transcript. *See Bursey* at 1080-81. In doing so we cannot ignore the reliance by the Independent Counsel on all the investigatory evidence.

The Independent Counsel's Motion in Opposition contends that the witness' interest in obtaining his grand jury testimony for the purpose of protecting his reputation in the community is "at odds with the strict secrecy requirements surrounding grand jury requirements." Motion in Opposition at 6. Thus, presumably, a reputational interest, which is only one of the factors here, is not, under the Independent Counsel's formulation, a legitimate basis for asserting a particularized need—perhaps not in an ordinary grand jury investigation of a criminal complaint. This contention, however, fails to credit the text of the Independent Counsel Act, 28 U.S.C. § 591 *et seq.* (1987), the scope of its subjects, and its legislative history, *supra.* Independent counsel investigations are covered by special laws enacted by Congress. As referred to above, the Independent Counsel

Act in its provisions with respect to comment proceedings explicitly permits "individuals named" in the Independent Counsel's Report to "submit comments and factual information" to be included, at this court's discretion, in an appendix to the Report. 28 U.S.C. § 594(h)(2). This right stems from the hazard to the *reputation* of the high-level officials covered by the Act and because of the obligation of the Independent Counsel to file a report, that is usually made public, covering the full investigation even if no person is indicted. The reputation of a public official, particularly his reputation for ethical behavior, is an associated element in many independent counsel investigations. And when an indictment is not returned, as here, the reputation of involved individuals is the surviving element most in need of protection, as many individuals equate a criminal investigation with guilt. These are some of the substantial distinctions between this investigation and the ordinary criminal investigation contemplated by Rule 6(e)(2). The argument by Independent Counsel does not adequately recognize these major differences between the two proceedings.

Comments by a principal witness are particularly appropriate in this cause because of the magnitude of the issues that were investigated and because some of the witness' testimony went directly to such issues. The witness' purely personal interests in ensuring the accuracy of the Report through the comment process are augmented by institutional concerns of the Executive Branch and Congress and by the national interest. Thus, the interests in providing the witness a transcript transcend the issues raised in either *Bast v. United States, supra,* or *In re Bianchi, supra.* In those two cases, the impact of the denial of access to the requested grand jury transcript would have little effect beyond the immediate parties.

The Independent Counsel first asserted that the witness' motion for release of his grand jury transcripts was based on "ill defined speculation" that his name may appear in the Report. Motion in Opposition at 5. The alleged "speculation," however, proved to be accurate. Upon release of the Report, it turned out to contain very extensive references to the witness. Independent Counsel then changed the line of attack and asserted that the court "overestimated the significance of the witness' testimony" because the Report "only" mentioned his testimony on a "few" pages in the factual section. Motion to Reconsider at 8, n. 7. The Independent Counsel also alleged that the references to the witness' testimony were not "qualitative[ly]" significant because the Report's analytical section contained no mention of the testimony. *Id.* Notwithstanding the Independent Counsel's disparaging characterization of the witness' testimony, this court finds that the multitudinous references to him, which focused on some of the most critical questions in the investigation were significant both *quantitatively and qualitatively.*[14]

The significance of the witness' testimony is underscored by other evidence in the record that led the Attorney General to request the division of the court to appoint an independent counsel to investigate the complaints. Such evidence, apart from grand jury testimony, placed the witness in a very significant position in the alleged offense being investigated.

The original analysis by the Public Integrity Section of the Department of Justice of the initial evidence (Department of Justice analysis) took a similar position as to the involvement of the witness. The Department of Justice analysis found apparent inconsistencies and misstatements in his interviews which were possibly suggestive of participation in an apparent offense.

The cases the Independent Counsel relies on to assert that the witness has not demonstrated a particularized need are inapposite. The proper interpretation of impor-

---

**14.** Our Order was also substantiated by the failure to include the witness in the list of individuals named in the Report to receive portions of the Report for the purpose of submitting comments and factual information.

tant policy questions is directly involved in determining the legality of the conduct of high-level public officials. The determination of the validity of the conduct in turn implicitly involves the factual *accuracy* of much of the testimony concerning the underlying conduct—a factor of direct interest to the individual, the government and the public—and to the court in deciding the extent of release of the testimony and the extent that any information may be included in any appendix. 28 U.S.C. § 594(h)(2). Particular comments place the witness as having an active, decision making role in a possible criminal conspiracy. Because the evidence and the various reports place the witness' acts in a different light, and because of the other stated reasons, the court, finds that the complete record demonstrates that the witness has a particularized need to receive his grand jury testimony.

## V. JUDICIAL PROCEEDING

 Next, the Independent Counsel argues that the witness' motion does not comply with the Federal Rule of Criminal Procedure 6(e)(3)(C)(i) which provides that in the ordinary criminal case the general rule of grand jury secrecy is that disclosure may only be obtained "when so directed by a court preliminarily to or in connection with a *judicial proceeding.*" (Emphasis added.) The Independent Counsel asserts that the comment proceedings, and the motion for the release of grand jury testimony, are "extra-judicial" in nature and thus,

outside the scope of Rule 6(e)(3)(C)(i).[15] Motion in Opposition at 6. The Independent Counsel offered no authority defining a judicial proceeding to support such contentions.

This court cannot agree with Independent Counsel's argument that this cause does not involve a judicial proceeding. We find that the record in this cause supports the witness' claim that he has a particularized need for his grand jury testimony in connection with a judicial proceeding, to-wit, his right to submit comments to the Report of the Independent Counsel which the court, in its discretion, may include in the Appendix. Relevant authority on this question indicates that the § 594(h)(2) comment and decision process is a judicial proceeding.

The term judicial proceeding has been given a broad interpretation by the courts. *Doe v. Rosenberry*, 255 F.2d 118 (2d Cir. 1958) (Under the rule permitting disclosure of matters occurring before a grand jury in connection with a judicial proceeding, a hearing by a grievance committee of the bar association on misconduct charges, while not a "criminal proceeding," was held to be "a judicial proceeding" within the rule—the hearing was designed to "preserve the good name and uprightness of the bar.") (Circuit Judge Learned Hand). This is closely analogous to the objective of the comment proceeding; *Richeson v. Kessler*, 73 Idaho 548, 255 P.2d 707, 709 (1953) ("[J]udicial proceedings are not restricted to trials, but include[ ] every proceeding of a judicial nature before a court or official

**15.** The Independent Counsel correctly cites *United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), as requiring that a party requesting grand jury material must demonstrate that his "primary purpose" for acquiring the material is preliminary to or in connection with a judicial proceeding. 463 U.S. at 480, 103 S.Ct. at 3167. *See* Motion in Opposition at 5. We find that a judicial proceeding exists when the Act requires the division of the court to exercise its judicial discretion in determining what "portions of [an independent counsel's] report" it may "consider appropriate" to release to the Congress, the public, or any appropriate person, in "[making] such orders as are appropriate to protect the rights of any

individual named in [the] report"; in deciding "to make any portion of a final report ... available to any individual named in such report for the purpose of receiving ... any comments or factual information that such individual may submit; and in deciding "in the discretion of the division of the court, in whole or in part ..." what "comments and factual information ... may be included as an appendix to such final report." § 594(h)(2). The witness' statement that he desires his grand jury transcript to prepare his comments to the Independent Counsel's Report concerning his central role in the subject of the investigation and the circumstances of his testimony satisfies the *Baggot* primary purpose requirement. Motion to Release at 1–2.

clothed with judicial or quasi judicial power ...''); *Jones v. City of Greensboro,* 51 N.C.App. 571, 277 S.E.2d 562, 571 (1981) ("A judicial proceeding includes every proceeding of a judicial nature before a competent court or before a tribunal or officer clothed with judicial or quasi judicial powers.''); *Jarman v. Offutt,* 239 N.C. 468, 80 S.E.2d 248 (1954) (same as the *City of Greensboro*). *United States v. Tager,* 506 F.Supp. 707, 719 (D.C.Kan.1979) also itemizes the broadening expanse of causes where disclosure of grand jury testimony is being granted.[16]

*In re Minkoff,* 349 F.Supp. 154 (D.R.I. 1972), also defined a judicial proceeding under Rule 6(e) as "any proceeding wherein judicial action is invoked and taken." *Minkoff* at 156 [quoting *Mannix v. Portland Telegram,* 144 Or. 172, 23 P.2d 138 (1933)]. Moreover, as noted above, the Chief Justice recently stated the "functions that the Division is empowered to perform [are] directly analogous to functions that federal judges perform in other contexts ..." *Morrison v. Olson,* — U.S. ——, 108 S.Ct. 2597, 2614, 101 L.Ed.2d 569 (1988). It is a judicial proceeding when the court determines what portions of the report it "considers appropriate" to release to the Congress, the public, or any appropriate person. This process includes ruling on "such comments and factual information [submitted by named individuals] in whole or in part that the court may [in the exercise of judicial discretion] decide to include as an appendix to the final report." In this statutorily limited context, the court acts as an arbiter between the power of the state, vested in the Independent Counsel, and the rights of named individuals, as guaranteed by the Independent Counsel Act.[17]

## VI. CONCLUSION

For the reasons set forth herein, the court denies the Independent Counsel's Motion to Reconsider Release of the Grand Jury Transcripts and orders that Independent Counsel forthwith deliver the witness a copy of his testimony as a witness before

**16.** *United States v. Tager,* 506 F.Supp. 707, 719 (D.C.Kan.1979):

"This comports with the general broad interpretation given the "judicial proceeding" language now found in (2)(C). See, e.g., *Haldeman v. Sirica,* 501 F.2d 714 (D.C.Cir. 1974) (disclosure of grand jury material to House Committee considering impeachment); *In re Special February 1977 Grand Jury v. Conlisk,* 490 F.2d 894 (7th Cir.1973) (disclosure in connection with police disciplinary investigation); *Gibson v. United States,* 403 F.2d 166 (D.C.Cir.1968) (state criminal proceedings); *United States v. Shillitani,* 345 F.2d 290, 293 (2d Cir.1965), *vacated on other grounds,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) (parole hearing); *Doe v. Rosenberry,* 255 F.2d 118, 120 (2d Cir.1958) (disbarment proceedings); *United States v. Salanitro,* 437 F.Supp. 240 (D.Neb.1977) (state disbarment proceedings and state judge impeachment proceedings); *In re Grand Jury Investigation of Ven–Fuel,* 441 F.Supp. 1299 (M.D.Fla.1977) (House Committee investigating need for legislation); *In re Report and Recommendation of June 5, 1972 Grand Jury,* 370 F.Supp. 1219 (D.D.C.1974) (investigation into Presidential impeachment by House Committee); *In re Grand Jury Investigation,* 414 F.Supp. 74 (S.D.N.Y.1976) (civil litigation); *In re Cement–Concrete Block, Chicago Area Grand Jury,* 381 F.Supp. 1108 (N.D.Ill. 1974) (civil litigation); *In re Grand Jury Transcripts,* 309 F.Supp. 1050 (S.D.Ohio 1970) (police disciplinary proceedings); *In re Bullock,* 103 F.Supp. 639 (D.D.C.1952) (police disciplinary proceedings); Note, *Administrative Agency Access to Grand Jury Materials,* 75 Colum.L.Rev. 162, 170 (1975)."

**17.** In n. 9 of movant's Motion to Reconsider, the Independent Counsel argues that if the court considers the Independent Counsel investigation including grand jury proceedings and the Report a single judicial proceeding, the Supreme Court's decision in *United States v. Baggot,* 463 U.S. 476, 480 n. 4, 103 S.Ct. 3164, 3167 n. 4, 77 L.Ed.2d 785 (1983), requires this court to vacate its order releasing the witness' transcripts. The Independent Counsel's theory is that an interpretation that the entire investigation is one judicial proceeding would prohibit the witness from asserting that he requires the grand jury transcript to prevent injustice in another judicial proceeding as required by *Baggot.* Motion to Reconsider at 9 n. 9. This contention is overly literal. The Independent Counsel's argument is largely semantic, and the court concludes that the proceedings presently pending constitutes a judicial proceeding separate and apart from the grand jury proceedings undertaken by the Independent Counsel. *See* In re Franklyn C. Nofziger, Edwin Meese III, Div. No. 87–1, June 22, 1988.

the grand jury.[18]

*Order accordingly.*

18. "Only strong public policies weigh against disclosure," *United States v. Procter & Gamble,* 356 U.S. at 682, 78 S.Ct. at 986.