702 F.2d 406
 Fed. Sec. L. Rep. P 99,137
In re Application of EXECUTIVE SECURITIES CORPORATION.
EXECUTIVE SECURITIES CORPORATION, by Cameron F. MacRAE III,
as Trustee, Applicant-Appellant,
v.
John DOE, Objector-Appellee.
 No. 796, Docket 82-6286.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 7, 1983.
Decided March 11, 1983.
 
 Eric H. Moss, New York City (LeBoeuf, Lamb, Leiby & MacRae, New York City, on brief), for applicant-appellant.
 William M. Brodsky, New York City (Baden, Kramer & Huffman, New York City, on brief), for objector-appellee.
 Paul Gonson, Sol., S.E.C., Washington, D.C., submitted a brief for amicus curiae S.E.C.
 Before KAUFMAN, TIMBERS and NEWMAN, Circuit Judges.
 NEWMAN, Circuit Judge:
 
 
 1
 This is an appeal from an October 26, 1982, order of the United States District Court for the Southern District of New York (Kevin Thomas Duffy, Judge) denying an application under Fed.R.Crim.P. 6(e)(3)(C)(i) for the release of the testimony of a grand jury witness. The Court ruled that the applicant in this case, who was acting as trustee for the liquidation of Executive Securities Corporation, had not established a particularized need for the testimony. We conclude that the District Court overestimated the harm that would be done by releasing the testimony in this case and underestimated the applicant's need for the materials. We therefore reverse the District Court's order and remand the matter.
 
 I.
 
 2
 On February 14, 1975, appellant Cameron F. MacRae was appointed trustee for the liquidation of Executive Securities Corporation, a financially distressed broker-dealer. Pursuant to the Securities Investor Protection Act of 1970 Sec. 5(b)(3), 15 U.S.C. Sec. 78eee(b)(3) (1976 & Supp. IV 1980), MacRae was nominated to be trustee by the Securities Investor Protection Corporation (SIPC), a corporation established by Congress, and was appointed by order of the United States District Court for the Southern District of New York (Charles H. Tenney, Judge). As trustee of Executive Securities, MacRae possessed powers and duties comparable to those of a trustee for a debtor forced into Chapter 7 liquidation under the Bankruptcy Code. See 15 U.S.C. Sec. 78fff(b) (Supp. IV 1980).
 
 
 3
 While serving as trustee, MacRae came to suspect that Richard O. Bertoli, former president of Executive Securities, had defrauded the corporation and its creditors. To recoup the losses caused by this fraud, MacRae filed suit against Bertoli alleging $2.8 million dollars of damages. Executive Securities Corp. v. Bertoli, 77 Civ. 714 (MJL) (S.D.N.Y.).[1] MacRae's suit against Bertoli was filed on February 14, 1977, and still awaits trial in the Southern District of New York. The pace of litigation has been slowed by Bertoli's persistent claims that he is impoverished and will not be able to pay any judgment rendered against him.
 
 
 4
 In April 1981, the United States Attorney gave an unexpected boost to MacRae's suit against Bertoli by making an ex parte application to the Southern District of New York (Morris E. Lasker, Judge) for the release of certain grand jury testimony and related materials. The grand jury records, which Judge Lasker released to the trustee, revealed that Bertoli had fraudulently transferred $210,000 of stock held by a subsidiary of Executive Securities to Bland Investments, S.A., a Cayman Islands corporation. The transfer took place between 1977 and 1980, a period throughout which Bertoli was pleading impoverishment in the District Court. A crucial component of the grand jury records was testimony by the appellee in this case, a witness whom we shall call John Doe. Doe, an officer of Bland Investments and a Cayman Islands attorney, testified that the beneficial owner of Bland was Alfred B. Averell, a close associate of Bertoli's and a former vice-president of Executive Securities. In light of Doe's testimony and the close relationship between Bertoli and Averell, MacRae had a substantial claim under the Cayman Islands law of fraudulent conveyances to recover the $210,000 that Bertoli had transferred to Bland Investments. With Doe's grand jury testimony in hand, MacRae began preparations to institute appropriate action in the Cayman Islands courts.
 
 
 5
 Before MacRae could file suit, however, counsel for Doe appeared before the Southern District of New York (David N. Edelstein, then Chief Judge) with an application to reseal the witness's testimony. While the Court was considering Doe's application, lawyers for the witness and MacRae agreed to reseal the testimony with a stipulated order, which Judge Edelstein subsequently endorsed. The record was resealed on the following terms:
 
 
 6
 [A]s long as [Doe] and his law firm concede and do not deny in any litigation in the Cayman Islands that insofar as their knowledge extends, Alfred B. Averell was at all material times the beneficial owner of Bland Investments, S.A., the United States Attorney for the District shall not release or divulge to any person or entity the transcript of any testimony by [Doe] before a federal grand jury on December 1, 1980.
 
 
 7
 The order also specified that a further order from the District Court would be necessary to reopen the sealed record.
 
 
 8
 Armed with the stipulated order, MacRae began efforts in the Grand Court of the Cayman Islands to recover the fraudulently transferred assets. Counsel from Doe's firm, representing both Bland Investments and Averell, promptly breached the condition of the consent order by denying that Averell was the beneficial owner of Bland Investments. Counsel from Doe's firm also counterclaimed against MacRae for $210,000 alleging wrongful interference with Bland Investments' business affairs.
 
 
 9
 MacRae thereupon returned to the Southern District of New York to request that Doe's grand jury testimony be reopened. Local counsel for Doe opposed MacRae's application. MacRae initially argued that the District Court (Kevin Thomas Duffy, Judge) should release the records without further adjudication because Judge Edelstein's order was self-executing as soon as Doe or his law firm denied that Averell was the beneficial owner of Bland Investments. The District Court rejected this argument on the ground that a witness may not stipulate to the release of grand jury testimony. The Court ruled that the judiciary should determine whether an application has established a "particularized need" for the records that outweighs the public's interest in maintaining grand jury secrecy. See Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979); Dennis v. United States, 384 U.S. 855, 872, 86 S.Ct. 1840, 1850, 16 L.Ed.2d 973 (1966); United States v. Proctor & Gamble Co., 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).
 
 
 10
 Applying the balancing test outlined in Douglas Oil, supra, the Court concluded that the societal interests in ensuring grand jury secrecy outweighed MacRae's interest in using Doe's testimony to recover assets for Executive Securities and its creditors. According to the District Court, the release of the grand jury records would discourage potential witnesses from testifying before grand juries in the future. The District Court concluded that the release would be particularly damaging in this case because Doe might well be prosecuted under the Cayman Islands Confidential Relationship (Preservation) laws for revealing the identity of the principals of Bland Investments, were his grand jury testimony to become public. Judge Duffy therefore denied MacRae's application to release the grand jury records.
 
 II.
 
 11
 We agree with the District Court that witnesses do not have the prerogative to effect the release of transcripts of their own grand jury testimony. But cf. In re Grand Jury Investigation, 610 F.2d 202, 217 (5th Cir.1980) (witness may discuss his grand jury testimony). The Supreme Court made clear in Douglas Oil and its predecessors that the secrecy of grand jury records serves many interests in addition to those of witnesses who happen to testify before any particular grand jury.
 
 
 12
 First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.
 
 
 13
 Douglas Oil, supra, 441 U.S. at 219, 99 S.Ct. at 1673; see United States v. Procter & Gamble, supra, 356 U.S. at 681 n. 6, 78 S.Ct. at 986 n. 6 (quoting United States v. Rose, 215 F.2d 617, 628-29 (3d Cir.1954)). Clearly, the judiciary cannot depend upon a grand jury witness to assess all of these considerations.[2]
 
 
 14
 We disagree with the District Court, however, in its conclusion that, because Doe could not effectively agree to release his testimony, his stipulation was without legal significance. We find it highly significant that Doe agreed to the release of his testimony in the event that his law firm ever denied that Averell owned Bland Investments. Doe entered into this consent agreement with full knowledge of the risk of prosecution under Cayman law if a breach of the agreement were to result in release of his testimony.[3] By using the agreement to secure Judge Edelstein's granting of the motion to reseal, Doe waived his right to have another District Judge consider whatever interest he personally might have in keeping his grand jury testimony secret. Doe's agreement to have his testimony released if his law firm denied Averell's ownership distinguished him from an ordinary grand jury witness seeking to keep testimony secret. See United States v. Dennis, supra, 384 U.S. at 871-72 & n. 18, 86 S.Ct. at 1849-50 & n. 18 (courts should consider only the rationales for grand jury secrecy that apply to the records at issue).
 
 
 15
 The District Court was concerned that the release of Doe's testimony would discourage future witnesses from volunteering their testimony to other grand juries. We believe that releasing the records in this case will have no such effect. Doe waived his right to object to the release of the records. Prospective witnesses can be assured that their desire for secrecy will be given all due consideration, as long as they do not enter into a similar waiver.[4]
 
 
 16
 Other traditional justifications for grand jury testimony are inapplicable in this case. There is no risk that the members of the grand jury that heard Doe testify will be influenced by the release of the transcript, because the grand jury is no longer sitting.[5] See In re Grand Jury Investigation (Sells), 642 F.2d 1184, 1192 (9th Cir.1981), cert. granted, --- U.S. ----, 102 S.Ct. 2034, 72 L.Ed.2d 483 (1982); United States v. Sobotka, 623 F.2d 764, 767 (2d Cir.1980). Moreover, MacRae has agreed to have the names of the grand jurors redacted from the record prior to release. Release of the records in this case will provide no warning to the target of the investigation, Albert Averell, who already knows about the grand jury inquiry and, in fact, has returned to New York to appear before the District Court to oppose the release of the records.
 
 
 17
 The only remaining interest in maintaining grand jury secrecy in this case stems from the possibility that Averell's reputation might be tainted by the release of the news that he was under grand jury investigation. While we do not discount the significance of this concern, particularly for Averell, this single interest does not suffice to bar disclosure.
 
 
 18
 Against the minimal public interest in grand jury secrecy must be weighed MacRae's need for the records. The District Court found MacRae's interest to be no more than that of any private party who seeks to prevail in civil litigation. We cannot accept this assessment. In seeking Doe's grand jury testimony, MacRae appears in his capacity as a SIPC trustee. He appears before the District Court in order to further the congressionally-mandated purpose of protecting the investors, who placed their assets with Executive Securities Corporation, and the SIPC, which insured those investors. See Securities Investor Protection Corp. v. Barbour, 421 U.S. 412, 417, 95 S.Ct. 1733, 1737, 44 L.Ed.2d 263 (1975). Although not formally part of the federal government, the SIPC and its trustees vindicate important public interests. We have previously recognized that parties who represent such interests should receive added consideration when they seek the release of grand jury records. See, e.g., United States v. Sobotka, supra, 623 F.2d at 768. But see In re Grand Jury Proceedings (Miller), 687 F.2d 1079, 1091-92 (7th Cir.1982); In re Grand Jury Investigation (Sells), supra, 642 F.2d at 1191-92. Although MacRae's status as a SIPC trustee does not, without more, establish his entitlement to release of Doe's grand jury testimony, see In re Grand Jury Investigation of Cuisinarts, Inc., 665 F.2d 24, 36 (2d Cir.1981), petition for cert. filed, 50 U.S.L.W. 3717 (U.S. Feb. 17, 1982) (No. 81-1595), it is a factor to be weighed in the Douglas Oil balancing test.
 
 
 19
 One further consideration in favor of releasing the records is the risk that MacRae might be found liable for the $210,000 counterclaim brought against him in the Cayman Islands court for wrongfully interfering with the business affairs of Bland Investments. Without Doe's testimony, MacRae might not be able to establish that he had good reason to believe when he brought his suit that it would be successful.
 
 
 20
 Measuring MacRae's need for the grand jury testimony against the minimal interest in maintaining grand jury secrecy in this case,[6] we conclude that the applicant is entitled to the release of the records.
 
 
 21
 The order of the District Court is reversed and the cause remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Although MacRae's civil action is still pending, Bertoli has since been enjoined from engaging in broker-dealer activities by the Securities and Exchange Commission and has been convicted after pleading nolo contendere to related criminal charges filed in the United States District Court for the District of New Jersey. United States v. Bertoli, 77 Crim. 236 (D.N.J.)
 
 
 [2]
 Any significant public interest in maintaining the secrecy of grand jury records is normally asserted by the United States Attorney. The Government informed us at oral argument that it takes no position on the release of Doe's testimony. The United States Attorney did, however, initiate the release of Doe's testimony in 1981
 
 
 [3]
 The District Court indicated that MacRae was on notice that Doe might be prevented from complying with his agreement by Cayman law. Our review of the record reveals that the only time Doe's counsel mentioned this difficulty was during an in camera session with Judge Edelstein, at which neither MacRae nor his counsel was present
 
 
 [4]
 Alternatively, it might be argued that, regardless of Doe's waiver, any release of grand jury testimony will deter future witnesses who might hear of the fact of release in this case without also learning of the particulars of the application. At one time, when the release of grand jury testimony was a rarity, the argument may have had some force. But now, the 1970 amendment of the Jencks Act has made the release of grand jury testimony a frequent occurrence. See Organized Crime Control Act of 1970, Pub.L. No. 91-452, Sec. 102(d), 84 Stat. 922, 926 (codified at 18 U.S.C. Sec. 3500(e)(2) (1976)). Every sophisticated grand jury witness knows that, if he becomes a witness at trial, his grand jury testimony will most likely be revealed to the public. For future witnesses trying to decide whether to testify before grand juries, the marginal deterrent effect of releasing one more transcript on the facts of this case can only be trivial
 
 
 [5]
 Doe testified before the grand jury in December 1980, and the eighteen-month term of the grand jury, see Fed.R.Crim.P. 6(e), has long since expired
 
 
 [6]
 We accept appellant's explanations why Cayman discovery offers no alternative means of discovering the information revealed in Doe's testimony