**Emanuel S. DAVIS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 92–CF–1317.

District of Columbia Court of Appeals.

Argued Feb. 1, 1994.
Decided May 9, 1994.

Eli Gottesdiener, Public Defender Service, with whom James Klein, and Jo–Ann Wallace, Public Defender Service, were on the brief, for appellant.

M. Evan Corcoran, Asst. U.S. Atty., with whom J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher, Roy W. McLeese, III, and Kathleen Brandon, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN,* Acting Chief Judge, TERRY, Associate Judge and PRYOR, Senior Judge.

PRYOR, Senior Judge:

A jury convicted appellant of rape while armed,[1] carnal knowledge of a minor,[2] robbery while armed,[3] kidnapping while armed,[4] two counts of sodomy on a minor,[5] and possession of a firearm during a crime of violence.[6] Appellant makes two claims on appeal: (1) that the trial court erred when it denied his alibi witness' pretrial motion to disclose the transcript of her own grand jury testimony, and (2) that the trial court erred when, instead of dismissing the indictment, the court gave a missing evidence instruction as sanction for the government's failure to preserve potentially exculpatory evidence. We affirm.

---

* Judge Ferren was an Associate Judge of this court at the time of argument. His status changed to Acting Chief Judge on March 18, 1994.

1. D.C.Code §§ 22–2801, –3202 (1989 Repl.).

2. *Id.* at § 2801.

3. *Id.* at §§ 22–2901, –3202.

4. *Id.* at §§ 22–2101, –3202.

5. *Id.* at § 22–3502.

6. *Id.* at § 22–3204.

# I.

## Facts

The evidence presented at trial showed that the fifteen-year-old victim in this case was walking home unaccompanied from a bus stop at 11:00 p.m., when a man placed a gun to her back and forced her to walk with him. He led her down an alley to the rear of a house which stood behind a padlocked chain link fence. The man unlocked the padlock with a key he was carrying and took the victim through the back door entrance to the house, which was unlocked. They entered a downstairs room, where the assailant sexually assaulted the victim for an hour. When he was finished, he forced her to accompany him to the upper floor of the house, where he retrieved some mail from a window sill. They exited the house by the same means they had entered and, after locking the padlock on the gate behind them, the assailant fled, carrying all of the victim's clothes except the jacket and socks she had on.

Shortly thereafter a woman in a neighboring house, who observed the victim standing nearly naked in the alley crying, offered assistance. The victim described her assailant to the woman and pointed to the house in which the assault occurred.

When the victim arrived home, her mother phoned the police. That night, the victim described her assailant to a detective as a black male, 5'5" tall;[7] she identified the exterior of the house in which the attack occurred and described its layout and furnishings; and she was examined by a physician at D.C. General Hospital.[8] The examining physician found strong evidence of sexual assault in the victim's level of emotional upset, bruising consistent with her claims, and the presence of blood in her rectum.[9]

Nearly two months after the assault, and then again several weeks later, the victim was travelling on a city bus with her mother when she recognized one of her fellow passengers as her assailant. Because she was afraid, she did not confront him on either occasion; however, the police were informed of the sightings. Later, when presented with a photographic array, the victim identified a photograph of appellant as her assailant. She also identified him in a lineup and again in the courtroom.[10]

Appellant admitted that he and his family had resided in the house in which the victim was raped and that they were in the process of moving out of that house during the week of the rape. He also admitted that he was one of three family members (all of them male) who had a key to the padlock on the back gate, and that he and his brother had an arrangement whereby they alternated retrieving the mail from their former residence.

At trial, appellant presented a defense of misidentification[11] and alibi. Nataniah Mosby, appellant's girlfriend, was his primary alibi witness. Both Ms. Mosby and appellant testified that they met each other in the early evening on the day the rape took place, and proceeded to appellant's family's new residence, where they spent the night. Ms. Mosby's friend, Wilmore Blakeney, testified that he went to appellant's family's new residence that evening at around 10:45 p.m. to deliver something to Ms. Mosby. He ob-

---

7. Several days later she further described him to a different detective as having thick lips and weighing 165 lbs.

8. The physician prepared a sexual assault kit which was subsequently destroyed while in the custody of the police. The destruction of this kit is the basis of appellant's second claim on appeal.

9. The victim told the examining physician that although her assailant had forced her to have anal, oral, and vaginal sex, he had ejaculated outside her body.

10. The victim's mother also identified appellant as the man her daughter had sighted on the bus. Further, the victim identified Nataniah Mosby, appellant's girlfriend, as the woman who accompanied appellant when she sighted him on the bus.

11. In support of his misidentification defense, appellant emphasized discrepancies between the victim's description of her assailant and appellant's actual physical characteristics. Whereas the victim described him as 5'5" tall and 165 pounds, appellant is 5'2" and 140 pounds. Appellant also noted conflicting testimony as to whether the victim initially described appellant as having a moustache.

served appellant and Ms. Mosby in the home at that time.

## II.

### Nature of Grand Jury Proceedings

■ The grand jury serves a "dual function" in our criminal justice system, *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 423, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743 (1983), operating as "both a sword and a shield." 1 C. WRIGHT, FEDERAL PRACTICE & PROCEDURE § 101 (2d ed. 1982) (quoting *In re Grand Jury January, 1969*, 315 F.Supp. 662, 671 (D.Md.1970)). While the grand jury is granted very broad investigatory powers to determine whether there is probable cause for criminal indictment, *see, e.g., United States v. Calandra*, 414 U.S. 338, 344, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974), it also serves as a "protective bulwark ... between the ordinary citizen and an overzealous prosecutor...." *United States v. Dionisio*, 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973).

A policy of secrecy has been deemed necessary to enable the grand jury to fulfill its dual purposes. *Sells Eng'g, supra*, 463 U.S. at 424, 103 S.Ct. at 3138 (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958)). This policy of secrecy is "older than our Nation itself," *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959); *see also Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 n. 9, 99 S.Ct. 1667, 1673 n. 9, 60 L.Ed.2d 156 (1979), and is codified in the criminal procedure rules of both the federal and District of Columbia courts. See FED.R.CRIM.P. 6; Super.Ct.Crim.R. 6.

Secrecy has been found to protect several identified interests:

"(1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their

friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*Procter & Gamble, supra*, 356 U.S. at 681–82 n. 6, 78 S.Ct. at 986 n. 6 (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3rd Cir.1954)).

■ Whether the policy of secrecy continues to serve a legitimate purpose is the subject of ongoing debate, *see* 1 WRIGHT, *supra*, § 106 n. 2, particularly where a breach of secrecy *after* the completion of a grand jury proceeding is contemplated. *Id.* at 244–45; *see, e.g., United States v. Moten*, 582 F.2d 654, 662–63 (2d Cir.1978). The Supreme Court has stated that the interest in secrecy is "reduced [but] not eliminated merely because the grand jury has ended its activities." *Douglas Oil, supra*, 441 U.S. at 221–24, 99 S.Ct. at 1674–76. We think it necessary for a court to carefully evaluate the impact of disclosure on the interests promoted by grand jury secrecy, even when the request for disclosure arises after the proceedings have concluded, in order to strike an appropriate balance between the investigatory powers of the state and the rights of individual citizens.

Further, some argue (including appellant here) that the policy of grand jury secrecy gives the government an unfair advantage when considered in light of the government's on-going custody of grand jury transcripts. *See* Super.Ct.Crim.R. 6(e)(1).[12] Because the transcripts are within its control, the government has use of them in preparing for trial,[13]

---

12. Super.Ct.Crim.R. 6(e)(1) states in pertinent part: "The recording or reporter's notes or any transcript prepared therefrom shall remain in the custody or control of the attorney for government unless otherwise ordered by the Court in a particular case."

13. "[T]he Government uses grand jury minutes to further its own interests in litigation. It is apparently standard practice for government attorneys to use grand jury minutes in preparing a case for trial ... [and] in refreshing the recollection of [its own] witnesses." *Pittsburgh Plate*

while the defendant's access to transcripts is very limited. *See* discussion of Discovery Rules and Jencks Act, *infra.*

■ While it is obvious that "in comparison with the right of the defendant and third parties, the right of the government to see and use the grand jury minutes is incomparably the greatest," 1 M. RHODES, ORFIELD'S CRIMINAL PROCEDURE UNDER THE FEDERAL RULES § 6:123 (2d ed. 1985), and that the record of a grand jury proceeding "constitutes a huge storehouse of relevant data which [is] in the exclusive possession of the government," *United States v. Ball,* 49 F.R.D. 153, 159 (E.D.Wis.1969), defendants are "not entitled to production of grand jury minutes solely for the reason that the government had the use of them in preparing its case." 1 RHODES, *supra,* § 6:123. This asymmetry in access to information is built into our criminal justice system and represents a justifiable balance between the competing interests of the accused and the public.

We note that legislatures and courts have balanced similarly competing interests in determining the appropriate scope of discovery in criminal prosecutions. While broad discovery rules "promote the fullest presentation of the facts, minimize opportunities for falsification of evidence and eliminate the vestiges of trial by combat," *State v. Tune,* 13 N.J. 203, 98 A.2d 881, 884 (1953) (quotation omitted), a defendant need not be afforded access to the "whole evidence against him to pick over at his leisure, and make his defense, fairly or foully...." *United States v. Garsson,* 291 F. 646, 649 (S.D.N.Y.1923) (Learned Hand, J.).

■ Under Super.Ct.Crim.R. 16, which governs pretrial discovery in this jurisdiction, an accused has the right to discover specific types of information within the government's control, including any written record of the defendant's relevant statements.[14] However, internal documents made by the government in connection with an investigation or prosecution are excluded from the scope of discovery. Super.Ct.Crim.R. 16(a)(2). Thus, Rule 16 represents a considered balance between the interests of the accused and the state.

■ The Jencks Act, 18 U.S.C. § 3500 (1988), is another method by which an accused may secure information in the possession of the prosecutor. After a government witness has testified at trial an accused has the right, pursuant to the Jencks Act, to review any prior statements by that witness that are within the government's control and are relevant to the witness' direct testimony, including the witness' testimony before a grand jury. The "advantages provided in the Jencks Act were never intended to be transposed to the pretrial context; rather, the heavy burden incumbent upon the prosecution pursuant to that act was intended to safeguard the fairness of criminal trials by providing defendants with appropriate tools for cross-examination." *United States v. Wolfson,* 289 F.Supp. 903, 912 (S.D.N.Y. 1968). Thus, a defendant is prevented from tailoring his defense in response to a pretrial review of the grand jury testimony of witnesses who will eventually testify at trial. The Jencks Act represents a balancing of the interests of the accused and the state similar to that underlying the policy of secrecy surrounding grand jury proceedings and the limits on the otherwise broad discovery rules.

### III.

Against this background, we turn to appellant's claim that the trial judge erred when he denied the pretrial motion made by appellant's trial counsel on behalf of Nataniah Mosby, appellant's primary alibi witness, requesting disclosure of the transcript of the testimony she presented to the grand jury that issued the indictment underlying the prosecution of appellant.

Prior to ruling on the motion the trial judge engaged in the following colloquy with Ms. Mosby:

*Glass, supra,* 360 U.S. at 404, 79 S.Ct. at 1243 (Brennan, J., dissenting).

**14.** Super.Ct.Crim.R. 16(a)(3) states that, with the exception of a defendant's right pursuant to Rule 16(a)(1)(A) to discover his or her own grand jury testimony, the rule does not apply to discovery of the recorded proceedings of a grand jury.

Q: The defense attorney indicates that you wanted to make some sort of request to the court.

A: Yes.

Q: Which is?

A: I want to see my testimony statement.

Q: Why do you want to see it?

A: No purpose, I just want it.

Q: Okay. That is the only reason why you wanted to take a look at it?

A: Yes.

\* \* \* \* \* \*

Q: Do you remember the events of October 4 [the day of the rape], what happened?

A: Yes.

Q: Is your memory shaky on that, what happened on October 4?

A: I remember some things.

The trial judge denied the motion because no showing of "particularized need" had been made.

Appellant contends that it was error for the trial court to apply the particularized need test where the request for pretrial disclosure of grand jury testimony was initiated by the grand jury witness herself,[15] and that

the court's application of the wrong standard resulted in prejudice to him. We disagree with both contentions.

### Standard of Review

■ Grand jury transcripts "shall remain in the custody and control of the attorney for the government unless otherwise ordered by the Court in a particular case." Super.Ct.Crim.R. 6(e)(1) (1993 Repl.).[16] The court is to order the pretrial release of a grand jury transcript only when "the party seeking disclosure has established a particularized need that outweighs time-worn considerations." *United States v. Alexander,* 428 A.2d 42, 53 (D.C.1981); *see also Sells Eng'g, supra,* 463 U.S. at 434, 103 S.Ct. at 3143;[17] *Johnson v. United States,* 616 A.2d 1216, 1237 n. 36 (D.C.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1611, 123 L.Ed.2d 172 (1993); *Salim v. United States,* 480 A.2d 710, 717 (D.C.1984).

■ A particularized need is established where the parties seeking disclosure " 'show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover

15. We assume, without deciding, that appellant has standing to appeal the denial of a motion made by his primary alibi witness. We acknowledge that such an assumption confronts the general principle that parties must assert their own legal rights and not those of others. *See, e.g., Powers v. Ohio,* 499 U.S. 400, 409, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991).

Nevertheless, it is tenable that appellant might successfully assert standing under one of two theories. In *Powers, supra,* the Court identified three criteria which, if satisfied, afford a defendant standing to assert the rights of a third person: (1) defendant must suffer "injury in fact," (2) defendant must have a "close relation" to the third party, and (3) the third party must be hindered in some way from asserting his or her own interests. *Id.* at 409–12, 111 S.Ct. at 1370–71.

Alternatively, appellant might assert that the denial of Ms. Mosby's motion implicates his fundamental right to present witnesses in his own defense. *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). Courts have found that a third party has standing to assert violations of Fed.R.Crim.P. 6, *see infra* note 16, where the alleged violation "harm[s] ... his interests as a defendant in a criminal trial." *In re Grand Jury Proceedings,* 814 F.2d 61, 66 (1st

Cir.1987). *See also Gluck v. United States,* 771 F.2d 750, 755 n. 4 (3d Cir.1985) (citing *Sells Eng'g, supra,* as recognizing the standing of "all persons potentially affected by the disclosure of grand jury materials").

16. The District's rule is based upon Rule 6(e) of the Federal Rules of Criminal Procedure; thus, cases interpreting the federal rule are instructive. *Law v. United States,* 488 A.2d 914, 915 (D.C. 1985).

17. The Supreme Court has construed Fed. R.Crim.P. 6(e) "to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted." *Sells Eng'g, supra,* 463 U.S. at 443, 103 S.Ct. at 1049 (citation omitted); *Douglas Oil, supra,* 441 U.S. at 223, 99 S.Ct. at 1675 ("disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and ... the burden of demonstrating this balance rests upon the private party seeking disclosure"); *Dennis v. United States,* 384 U.S. 855, 869–70, 86 S.Ct. 1840, 1848–49, 16 L.Ed.2d 973 (1966); *Pittsburgh Plate Glass, supra,* 360 U.S. at 398–401, 79 S.Ct. at 1240–42; *Procter & Gamble, supra,* 356 U.S. at 681–83, 78 S.Ct. at 986–87.

only material so needed.' " *Alexander, supra,* 428 A.2d at 53–54 (quoting *Douglas Oil, supra,* 441 U.S. at 222, 99 S.Ct. at 1674). The trial court has substantial discretion in determining whether this burden has been met, *Law, supra* note 16, 488 A.2d at 916; *Salim, supra,* 480 A.2d at 717; *see also Johnson v. United States,* 398 A.2d 354 (D.C. 1979), and we will reverse only upon a finding of abuse of discretion. *See Alexander, supra,* 428 A.2d at 52.

### Application of the Standard to a Witness' Request for Her Own Grand Jury Testimony

■ Appellant correctly states that this court has not issued an opinion wherein we have reviewed a trial court's ruling on a request arising in precisely this posture—a trial witness' pretrial request for a transcript of her own grand jury testimony. However, appellant mistakenly concludes that because our decision in *Alexander, supra,* involved a *defendant's request* for the pretrial disclosure of a *third party's* grand jury testimony, the particularized need test announced in that case is not applicable to Ms. Mosby's request for her own grand jury testimony.[18]

Instead, relying primarily on *In re Sealed Motion,* 279 U.S.App.D.C. 294, 880 F.2d 1367 (1989) (per curiam), a D.C. Circuit case which is not binding on this court, *see M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971), appellant contends that a grand jury witness has a presumptive right of access to the transcript of her grand jury testimony "absent a clear showing by the government that other interests outweigh the witness' right to [the] transcript." *Sealed Motion, supra,* 279 U.S.App. D.C. at 298, 880 F.2d at 1371.[19] *Contra United States v. Lopez,* 779 F.Supp. 13 (S.D.N.Y.1991) (considering and declining to follow *Sealed Motion* ). However, we view the holding of *Sealed Motion* in the particular context of that case—namely, a request by a witness for a transcript of the testimony she gave before a grand jury convened by an Independent Counsel. Because an investigation by an Independent Counsel concludes with a published report (regardless of whether indictments are returned) in which individuals who testified before the grand jury may be named, the Independent Counsel Act of 1987, 28 U.S.C. § 591 *et seq.,* empowers the court to "make such orders as are appropriate to protect the rights of any individual named in such [final] reports." *Id.* at § 594(h)(2). The need to protect these named witnesses gave rise to the court's conclusion that they were entitled to use the transcripts of their own grand jury testimony to prepare written comments in response to the Counsel's report. *Sealed Motion, supra,* 279 U.S.App.D.C. at 295–97, 880 F.2d at 1368–70 (citing 28 U.S.C. § 594(h)(2)).

We do not understand *Sealed Motion* to announce a new rule applicable to ordinary

---

18. For the purpose of this appeal, we review the request for disclosure of grand jury testimony as a request by Ms. Mosby. We note, however, that it would be possible, given the posture of this case, to view the request as originating with appellant himself. In an exchange with appellant's trial counsel, the trial judge candidly voiced this concern, when he asked, "In essence ... isn't it the defendant in this case that really wants grand jury testimony so if you called this person as a witness, that person would have been prepared to deal with any possible inconsistencies as a defense witness?" If we were to view the request for disclosure as emanating from appellant, this case would be indistinguishable from *Alexander* and our analysis unnecessary.

19. Appellant's brief refers to several cases from other jurisdictions cited by the *Sealed Motion* court, including *Bursey v. United States,* 466 F.2d 1059 (9th Cir.1972); *In re Minkoff,* 349 F.Supp. 154 (D.R.I.1972); and *In re Russo,* 53 F.R.D. 564 (C.D.Cal.1971). Additionally, appellant cites the recent case of *In re Heimerle,* 788 F.Supp. 700, 704–05 (E.D.N.Y.1992) (adopting the presumptive right standard of *Sealed Motion*).

Although each of these cases represent an instance in which a court has ruled that a grand jury witness should have access to a transcript of his or her testimony, and several of them include language indicating that the grand jury witness has a right of access to such testimony, the cases are all distinguishable on their facts. In each case the grand jury witness sought access to the transcript in order to protect his or her own legal rights as a defendant, potential defendant, or in conjunction with compelled testimony.

Appellant also relies heavily on this court's decision in *Wiggins v. United States,* 386 A.2d 1171 (D.C.1978). However, the request for grand jury transcripts in *Wiggins* was made pursuant to former Super.Ct.Crim.R. 16(b), which governs the discovery of books, papers, and documents. *Wiggins* is not relevant to our consideration of the request in this case which was made pursuant to R. 6(e).

criminal proceedings. *But see In re Heimerle, supra* note 19 (adopting the presumptive right standard announced in *Sealed Motion* where a witness made a request for his grand jury transcript in the context of a subsequent criminal proceeding). Further, although the *Sealed Motion* court explicitly relied in its reasoning on the "*sui generis* nature of the Independent Counsel Act and its specific provisions", 279 U.S.App.D.C. at 295, 880 F.2d at 1368, the court buttressed its conclusion by stating that the particularized need standard relevant to requests made pursuant to judicial proceedings had been satisfied in any event. *Id.*

We are more persuaded by the reasoning in *Alexander* and the application of the particularized need standard, which requires a showing that a requested disclosure of grand jury testimony is necessary "to avoid a possible injustice," *Alexander, supra,* 428 A.2d at 53, and that the "need for disclosure is greater than [any] continued need for secrecy." *Id. See also Application of Executive Sec. Corp.,* 702 F.2d 406, 408–09 (2d Cir.), *cert. denied,* 464 U.S. 818, 104 S.Ct. 78, 78 L.Ed.2d 89 (1983); *United States v. Clavey,* 565 F.2d 111, 114 (7th Cir.1977), *aff'd,* 578 F.2d 1219 (7th Cir.)(en banc), *cert. denied,* 439 U.S. 954, 99 S.Ct. 351, 58 L.Ed.2d 345 (1978); *In re Bast,* 542 F.2d 893, 896 (4th Cir.1976); *In re Bianchi,* 542 F.2d 98, 100 (1st Cir.1976).

*Alexander* sought to prevent the manipulation of a defense witness' testimony which might result if the defendant were to have pretrial access to the transcript of the grand jury testimony of that witness. The court stated that no showing of particularized need is made where a request for disclosure of a transcript is motivated by an interest in "think[ing] about and explain[ing] any inconsistencies between that grand jury testimony and [the witness'] present recollections," *Alexander, supra,* 428 A.2d at 54, or to avoid impeachment. *Id.*[20]

■ In the instant case, although Ms. Mosby initiated the request to disclose the transcript of her testimony, appellant acknowledges that she "clearly intended" to share it with defense counsel. We do not perceive in this request any cognizable interest in avoiding a possible injustice as required under *Alexander, supra.* Rather, by characterizing his counsel's actions as a request *on Ms. Mosby's behalf,* appellant attempts to circumvent the precedent established by this court in *Alexander.* Because a rule according a witness a presumptive right to a transcript of her own grand jury testimony would afford the defendant access to the grand jury testimony of that witness who, *for the sole purpose of benefitting the defendant,* was willing to make such a request, we require a showing of particularized need *regardless* of whether the defendant or a witness initiates the request for disclosure of grand jury testimony.[21]

While we acknowledge that many of the traditional reasons for protecting the secrecy of grand jury transcripts, *see Procter & Gamble, supra,* 356 U.S. at 681–82 n. 6, 78 S.Ct. at 986 n. 6, are not implicated here (where the request is made subsequent to indictment and by the grand jury witness herself), the interest to "prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it," *id.,* is pertinent. Thus, appellant has failed to establish the second prong of the *Alexan-*

20. In *Alexander* the defendant's motion to compel disclosure of the transcripts stated that "the grand jury testimony was required 'to adequately prepare the [defendant's] daughters [third parties] to become witnesses at trial.'" *Alexander, supra,* 428 A.2d at 52 n. 28.

21. We note that Ms. Mosby is not prevented from recounting to the defendant, or anyone else, her recollection of her testimony before the grand jury. *See In re Grand Jury Investigation,* 610 F.2d 202, 217 (5th Cir.1980) (witness may discuss his grand jury testimony); Super.Ct.Crim.R. 6(e)(2) (grand jury witness is not among category of persons sworn to secrecy). The fact that a grand jury witness is not legally prohibited from freely discussing her testimony with others does not diminish the court's duty to ensure that when that same witness requests the disclosure of the *transcript* of her testimony she makes the necessary showing of particularized need. As is evident in the instant case (and in *Alexander* ), when a defendant gains access to the transcript of the grand jury testimony of a witness he intends to call at trial, the transcript can be used for the purposes of manipulating the trial rather than pursuing the ends of justice.

*der* test, which requires a showing that the need for disclosure is greater than any continuing need for secrecy.

Given the structure of the grand jury system, and related discovery provisions, we conclude that the request presented here was not primarily a discovery request, but rather a hedge against impeachment. In any event, there was no attempt to make a showing of particularized need for release of the transcript of Ms. Mosby's grand jury testimony. On the facts presented we find no abuse of discretion.[22]

## IV.

### Destruction of Evidence

Appellant appeals the denial of his pretrial motion to dismiss the indictment in which he alleged that the government violated Super.Ct.Crim.R. 16 [23] by destroying the sexual offense evidence kit ("sex kit") that was prepared shortly after the rape occurred.[24]

According to testimony adduced at the hearing on the motion, the sex kit was inadvertently and improperly destroyed in January 1992 by a police officer who, upon the order of a superior officer, cleaned out the refrigerator in which sex kits were stored, removing over fifty kits that had no complaint or sex offense numbers on them.[25] Apparently, the kit prepared in conjunction with this case did not have either of these numbers affixed to it, as the case had not yet been designated "active." However, the government acknowledged that if the officer had been properly instructed, he would have used other information on the exterior of the kit to access the case file or identify the assigned officers in order to make the correct determination as to whether the kit should be preserved or destroyed.

At the conclusion of the hearing, the trial court found that the police had not acted in bad faith and, although they had acted negligently, they were not grossly negligent. The court then gave a missing evidence instruction as a sanction for the government's destruction of the sex kit.[26]

---

22. Appellant argues in the alternative that even if the trial judge was correct in his determination that the particularized need standard was appropriately applied in this instance, the court erred when it found that Ms. Mosby failed to make a sufficient showing. Appellant cites the colloquy between the trial judge and Ms. Mosby prior to the court's ruling, see Section III, *supra*, emphasizing Ms. Mosby's statement that she remembered "some things" about her activities on the day of the rape. Appellant fails to acknowledge that immediately prior to this statement, Ms. Mosby stated that she had "no purpose" in requesting the transcript of her testimony, or that when the judge first questioned her as to whether she remembered what happened on the day of the rape, she responded affirmatively.

The trial judge's inquiry regarding the extent of Ms. Mosby's recollection was undoubtedly motivated by the judge's awareness that the failure of a witness' memory regarding the events about which she is to testify is a sufficient basis upon which to establish a particularized need for disclosure of earlier grand jury testimony. *See Alexander, supra,* 428 A.2d at 54; *United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 235, 60 S.Ct. 811, 850, 84 L.Ed. 1129 (1940). *See also Dennis, supra,* 384 U.S. at 855, 86 S.Ct. at 1841 (a request for disclosure of grand jury testimony that is motivated by a desire to avoid impeachment is properly denied).

Although Ms. Mosby's responses to the court's questions might be variously interpreted, the court's discretionary determination that her

memory of events on the day in question was sufficiently intact was rationally based on the evidence presented. *See Johnson v. United States,* 398 A.2d 354, 364 (D.C.1979). Therefore, even under this theory, the trial judge did not abuse his discretion by denying the motion for disclosure. *Id.*

23. Super.Ct.Crim.R. 16(a)(1)(C) states: "Upon request of the defendant the prosecutor shall permit the defendant to inspect ... tangible objects ... which are within the possession ... of the government, and which are material to the preparation of the defendant's defense...."

24. The sexual offense evidence kit prepared in this case included specimens taken from the victim's oral, anal, and vaginal cavities, each of which may have contained some of the assailant's semen or blood, *see* note 9, *supra,* and combings from the victim's person which may have contained some of the assailant's hair.

25. We note that none of the officers involved in the inadvertent destruction of the kit had any connection to or particular knowledge of the investigation of the rape at issue in this case.

26. The trial court instructed the jury as follows:

You have heard a lot of testimony about this sex kit that the police [ ] lost or destroyed. Let me give you this instruction in that regard. If you find that the disposal of that sex kit in this

## Standard of Review

 When a party fails to comply with a discovery request, the trial court is authorized to "enter such ... orders as it deems just under the circumstances." Super.Ct.Crim.R. 16(d)(2). The imposition of sanctions requires the court to "consider a number of factors, including [1] the reason for nondisclosure, [2] the impact of nondisclosure, and [3] the impact of the proposed sanction on the administration of justice." *Wiggins v. United States*, 521 A.2d 1146, 1148 (D.C.1987) (citing *Lee v. United States*, 385 A.2d 159, 163 (D.C.1978)). However, the matter of what sanction, if any, is appropriate is within the discretion of the trial court, *see, e.g., Wiggins, supra*, 521 A.2d at 1148; *Sheffield v. United States*, 397 A.2d 963, 967 (D.C.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1071 (1979); *Cotton v. United States*, 388 A.2d 865, 870 (D.C.1978), and we will reverse only where we find abuse of discretion, *Yoon v. United States*, 594 A.2d 1056, 1061 (D.C.1991), *amended on reh'g*, 610 A.2d 1388 (D.C.1992) (citing *Wiggins, supra*), coupled with substantial prejudice to appellant's rights. *Washington v. United States*, 600 A.2d 1079, 1081 (D.C.1991) (citing *Lee v. United States*, 454 A.2d 770, 776 (D.C. 1982), *cert. denied*, 464 U.S. 972, 104 S.Ct. 409, 78 L.Ed.2d 349 (1983)).

Appellant claims that the trial court misapplied each of the three factors governing its exercise of discretion under Rule 16(d)(2). *See Wiggins, supra*. He argues that (1) the trial court should have found that the police were grossly negligent; (2) the trial court failed to apprehend that the contents of the sex kit *might* have exculpated appellant; and (3) the trial court failed to consider the impact of the sanction on the administration of justice. We disagree.

 First, we will not disturb a trial court's factual findings, such as the court's determination in this case that the police did not act in bad faith and were not grossly negligent, unless those findings are "plainly wrong or without facts to support [them]." D.C.Code § 17–305(a); *see also Johnson v. United States*, 398 A.2d 354, 364–65 (D.C. 1979); *cf., e.g., Slye v. United States*, 602 A.2d 135, 139 (D.C.1992) ("trial court's determination of the degree of negligence involved in the loss of a [Jencks Act] statement is a finding of fact and cannot be overturned on appeal unless clearly erroneous"). Further, even if the police conduct in this instance rose to the level of gross negligence, appellant cites no case which requires dismissal of an indictment on the basis of such a finding.[27]

 Second, the trial court appropriately assessed the impact of the nondisclosure. While tests performed on the missing sex kit might have exculpated appellant, it is equally plausible that the test results might have sealed the government's case against appellant, or produced no conclusive evidence whatsoever. It was for this very reason that the trial court properly issued a missing evidence instruction, permitting the jury, after vigorous argument by each party, to draw an inference against the government from the absence of the kit if they were so persuaded.

 Finally, appellant argues that the trial court was obligated to make a finding as to the impact of the missing evidence instruction on the administration of justice. Although the court is to consider this factor in

---

case has not been sufficiently accounted for or explained, then you may, if you deem it appropriate, infer that the analysis of its contents would have been unfavorable to the government.
*See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.41 (4th ed. 1993) (instruction for missing witness or other evidence).

27. Appellant cites *United States v. Bryant*, 142 U.S.App.D.C. 132, 142, 439 F.2d 642, 652 (1971), which is binding on this court, *see M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971), in support of his argument for dismissal. Under *Bryant*, "sanctions for nondisclosure based on loss of

evidence will be invoked ... unless the Government can show that is has promulgated, enforced and attempted in good faith to follow rigorous and systematic procedures designed to preserve *all* discoverable evidence.... Negligent failure to comply with the required procedures will provide no excuse." *Bryant, supra*. Appellant fails to acknowledge, however, that the trial court in the instant case did impose a sanction for nondisclosure—the missing evidence instruction. Further, we note that this court accords the trial court broader discretion to apply no sanction at all where the loss of evidence "is the result of no bad faith on the part of the government." *Sheffield, supra*, 397 A.2d at 967.

making its determination, appellant cites no authority which suggests that the court's failure to make an explicit finding in this regard constitutes an abuse of discretion. The trial court could reasonably conclude that the missing evidence instruction would increase the government's attention to preserving evidence in the future, as the instruction afforded the jury the opportunity to reject the government's contention that destruction of the sex kit in this instance was inadvertent.

While we are troubled by the government's negligent failure to safeguard this significant piece of evidence, in light of the strong evidence supporting appellant's guilt presented at trial, we conclude that the trial court properly exercised its discretion by issuing a missing evidence instruction rather than ordering dismissal of the indictment.

We remand to the sentencing court in order that the carnal knowledge conviction may be vacated,[28] and affirm in all other respects.

*So ordered.*

---

28. Although appellant did not raise a claim of merger with regard to his convictions for rape while armed and carnal knowledge of a minor, the government concedes that the two convictions must merge as they arose from a single sexual assault on a single minor victim. *See Scutchings v. United States,* 570 A.2d 1197, 1198 (D.C.1990).